```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __5/1/2024__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD BERRY,

                Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

                Defendants.

22-CV-05969 (MMG)

**DECISION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Before the Court is Defendant New York City Transit Authority's (the "Transit Authority") request to remain in this action solely for the purpose of pursuing its state law counterclaim against Plaintiff Ronald Berry ("Plaintiff"). *See* Dkt. No. 88. For the reasons discussed herein, the Transit Authority's request is denied.

## BACKGROUND

The Complaint in this action asserted a number of claims against the City of New York, the Transit Authority, and individual employees of both entities—including false arrest, malicious prosecution, and assault—all arising out of an arrest of the Plaintiff on or about October 3, 2019. *See* Dkt. No. 1. Plaintiff's arrest appears to have been precipitated by a Transit Authority employee calling the police to have Plaintiff arrested as a trespasser on Transit Authority property, apparently based on a view that Plaintiff was, in fact, no longer a Transit Authority employee. *Id.* As background to the circumstances of his arrest, Plaintiff's Complaint sets out facts regarding his employment with the Transit Authority, his medical leave from that employment, and his regular bi-weekly appearance at his former duty station to collect his paycheck, including on the day of the arrest that formed the basis for the claims brought in the Complaint. *Id.*

On July 31, 2023, the Transit Authority answered the Complaint and counterclaimed on a state law theory of unjust enrichment for the six years' of paychecks that Plaintiff received while Plaintiff was purportedly on medical leave. *See* Dkt. No. 52 at 9. On March 8, 2024, the City of New York and its employee defendants were dismissed from the case upon notification of settlement. On the same date, the Court granted the Transit Authority's unopposed motion to dismiss all claims against it in this action, and all claims against its employee Michael Herer except the false arrest claim under 42 U.S.C. § 1983. *See* Dkt. No. 82. Thus, following these dismissals, the only direct claim remaining in the case is the false arrest claim against Defendant Herer.[1]

In granting the Transit Authority's motion to dismiss, the Court did not rule on whether

---

[1] Plaintiff has asserted his willingness to dismiss the remaining claim against Defendant Herer, if the Transit Authority does not pursue its counterclaim. *See* Dkt. No. 89.

1

the Transit Authority could remain in the action to pursue its counterclaim, and the Transit Authority promptly alerted the Court to this unresolved issue and requested clarification. *See* Dkt. No. 83. The Court subsequently ordered the Transit Authority to provide a letter "not to exceed three pages outlining the legal justification for this Court retaining jurisdiction over its Counterclaim against Plaintiff when no cause of action against the Transit Authority remains." Dkt. No. 85. On March 21, 2024, the Transit Authority submitted a letter asking the Court to exercise its discretion as to "supplemental jurisdiction" over the Transit Authority's counterclaim. *See* Dkt. No. 88. On March 22, 2024, Plaintiff opposed the Transit Authority's request. *See* Dkt. No. 89.

## DISCUSSION

Whether the Transit Authority can pursue its counterclaim despite having been dismissed as a Defendant in this case—an unusual situation with a dearth of analogous instances in caselaw—turns on a two-part legal inquiry. First, the Court must determine whether the Transit Authority's counterclaim is compulsory under Federal Rule of Civil Procedure 13(a), and therefore whether the Court has independent subject matter jurisdiction to hear it. *See Harris v. Steinem*, 571 F.2d 119, 121 (2d Cir. 1978) ("[N]o independent basis of federal jurisdiction is needed for the court to adjudicate the ancillary issues thus raised [by a compulsory counterclaim], if the main claim itself presents a colorable federal issue."); *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210–213 (2d Cir. 2004). If the counterclaim is *not* compulsory but rather permissive, the Court must then determine whether it can and should exercise supplemental subject matter jurisdiction over the state law counterclaim pursuant to 28 U.S.C. § 1367(a).

For the reasons stated below, the Transit Authority's counterclaim is both permissive and outside the scope of the Court's supplemental jurisdiction, and therefore must be dismissed.

I.   **The Transit Authority's Unjust Enrichment Counterclaim is Permissive**

Federal Rules of Civil Procedure 13(a) and 13(b) divide counterclaims into two basic categories—compulsory and permissive. Fed.R.Civ.P. 13. "Whether a counterclaim is compulsory or permissive turns on whether the counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and this Circuit has long considered this standard met when there is a logical relationship between the counterclaim and the main claim." *Jones v. Ford Motor Credit Co.*, 358 F.3d at 209 (internal quotation marks omitted). "Although the logical relationship test does not require an absolute identity of factual backgrounds, the essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (internal citations and quotation marks omitted).

In its submission to the Court providing a legal justification for remaining in this action, the Transit Authority does not address the compulsory-permissive distinction but admits that the relationship between its counterclaim and Plaintiff's claims is "somewhat attenuated." *See* Dkt. 88 at 2. And indeed, when reviewed under the "logical relationship" test, the unjust enrichment counterclaim is clearly permissive. In broad strokes, the Complaint alleges violations of Plaintiff's constitutional rights arising out of his October 3, 2019 arrest. *See* Dkt. No. 1. That arrest appears to have been precipitated by divergent views as to whether Plaintiff was still a

Transit Authority employee, legitimately on medical leave, and thus permitted on Transit Authority property to collect his paycheck. The Transit Authority's unjust enrichment counterclaim for the paychecks received during the majority of what Plaintiff asserts was an authorized medical leave accordingly bears *some* relationship to the claims asserted in the Complaint. However, the determination of whether Plaintiff's constitutional rights were violated by his 2019 arrest for trespass is not logically dependent on whether he was unjustly enriched to the detriment of the Transit Authority for several years prior to that arrest, nor does the counterclaim "arise[] out of the transaction or occurrence that is the subject matter" of the Plaintiff's claims. *Jones v. Ford Motor Credit Co.*, 358 F.3d at 209. Furthermore, and as discussed further below in Part II of this Order, "the essential facts for proving the counterclaim and the [remaining federal] claim are not so closely related that resolving both sets of issues in one lawsuit would yield judicial efficiency." *Id.* at 210. The Transit Authority's counterclaim is thus permissive under the Federal Rules of Civil Procedure.

**II.     The Court Has No Supplemental Jurisdiction Over the Counterclaim**

Although the Transit Authority's counterclaim is permissive and not compulsory, the Court may still have subject matter jurisdiction to hear it if it falls within the scope of the Court's supplemental jurisdiction. The permissible scope of the Court's supplemental jurisdiction is set out in 28 U.S.C. § 1367(a):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Supplemental jurisdiction turns on whether the federal claims and the state claims stem from the "same 'common nucleus of operative fact.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Courts "must dismiss all claims that do not share a common nucleus of operative fact with Plaintiffs' federal claims, regardless of whether they are pled as a claim, counterclaim, crossclaim, cross-counterclaim or setoff." *LaChapelle v. Torres*, 37 F. Supp. 3d 672, 682 (S.D.N.Y. 2014). To determine whether the claims share such a common nucleus, courts "have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped ... [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" *Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (alterations in original) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Furthermore, supplemental jurisdiction is a "doctrine of discretion, not of [claimaint's] right," and its "justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Gibbs*, 383 U.S. at 726. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.*

### A. The Transit Authority's Unjust Enrichment Counterclaim and the Plaintiff's False Arrest Claim Do Not Stem from a Common Nucleus of Operative Facts

The only remaining claim in this action is against Defendant Herer for "False Arrest/Seizure" pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1 ¶¶ 31–34. To sustain such a claim, Plaintiff would be required to prove that he was seized or confined in violation of the Fourth Amendment, in other words, without his consent or without justification. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Id*. Probable cause exists when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id*. In the unusual situation, as here, where a civilian, rather than a police officer, is being sued for false arrest, the relevant inquiry will include whether "the police exercise[d] independent judgment to arrest a plaintiff" following whatever information was provided by the civilian defendant, *TADCO Const. Corp. v. Dormitory Authority of State of New York*, 700 F. Supp. 2d 253, 268 (E.D.N.Y. 2010) (internal references omitted), whether the civilian defendant instigated the arrest with an intent to confine the plaintiff, and whether the civilian defendant provided "false information leading to an arrest, where the defendant[] lacked reasonable cause for their belief in the plaintiff's culpability." *Id*. at 268-69 (internal references omitted).

The Transit Authority's state common law unjust enrichment counterclaim alleges that "Plaintiff received and cashed checks issued in error by [the Transit Authority]" for a period of years prior to his October 2019 arrest and seeks repayment of the monies allegedly issued in error and unjustly retained by Plaintiff. *See* Dkt. No. 52 ¶¶ 80–88. To sustain its counterclaim for unjust enrichment under New York law, the Transit Authority will need to prove that (1) Plaintiff was enriched, (2) at the expense of the Transit Authority, and (3) that it would be inequitable to permit Plaintiff to retain that which is claimed by the Transit Authority. *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 156 (S.D.N.Y. 2022).

Plaintiff's constitutional false arrest claim against Defendant Herer and the Transit Authority's unjust enrichment counterclaim against Plaintiff do not share an essential common nucleus of facts. Based on the allegations in the Complaint and the undisputed facts, Plaintiff's case will consist almost entirely of facts relating to events occurring during his October 3, 2019 arrest and a short time before and after that arrest. In contrast, the unjust enrichment counterclaim sought to be maintained by the Transit Authority inherently involves only (or at least, mainly) evidence *predating* Plaintiff's arrest—indeed, for years predating the arrest—because that counterclaim covers six years' of paychecks prior to Plaintiff's arrest, and none thereafter. Such minimal overlap in time and in relevant evidence does not constitute a common factual nucleus. [2] *See Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 394 (E.D.N.Y. 2007) ("[C]ourts have held that there is no common nucleus of operative fact where the events underlying the federal

---

[2] Some courts have held that permissive counterclaims without supplemental jurisdiction may remain for adjudication if they only involve a setoff. *See Petroff v. Ritmo Am.*, LLC, No. 8:13-CV-1928-T-30TBM, 2013 WL 12166335, at *2 (M.D. Fla. Oct. 2, 2013) (collecting cases). That issue is not present here.

claims occur at a different time than the events underlying the state law claims.") (also collecting cases).

While Plaintiff's false arrest claim may require some evidence regarding Defendant Herer's actual belief, or reasonable cause to believe, that Plaintiff was in fact trespassing (as opposed to present with authorization as a current employee) at the time of his October 3, 2019 arrest, and the Transit Authority's counterclaim will turn in some measure on when Plaintiff's status as an employee ended, that is where any potential overlap both begins and ends. Closer examination reveals even this minimal overlap to be, at best, tangential. As the Transit Authority notes in its submission, Plaintiff's arrest was due to the results of an "investigation by the Transit Authority's Special Investigation and Review Unit." *See* Dkt. No. 88. Under the Transit Authority's own characterization of the facts, Defendant Herer was merely a conduit between the results of that investigation and the police who effectuated Plaintiff's arrest. Because probable cause to arrest is a complete defense to a § 1983 false arrest claim, the truthfulness of the conclusions reached by that investigation will not be at issue; the only relevance the investigation has is whether it formed the basis for Defendant Herer's reasonable belief, conveyed to the police, that Plaintiff was trespassing on Transit Authority property. Whether Plaintiff was actually a trespasser, as opposed to an authorized employee, is entirely unnecessary to the inquiry into what Defendant Herer reasonably believed to be true. Thus, the litigation of the false arrest claim would not require litigating any issues that would support a finding that Plaintiff was or was not unjustly enriched at the Transit Authority's expense.[3] Because the claims do not substantially overlap, they share no common nucleus of operative fact and the permissive counterclaim must be dismissed.

### B. Public Policy and Judicial Economy Counsel in Favor of Dismissal of the Transit Authority's Counterclaim

Finally, in analyzing whether to dismiss or retain permissive state law counterclaims, the Supreme Court has urged district courts to also consider principles of judicial economy, convenience and fairness to the parties, and avoiding needless decisions of state law. *See Gibbs*, 383 U.S. at 726; *see also* 28 U.S.C. § 1367(c) (providing factors under which district courts may decline to exercise supplemental jurisdiction). Such considerations weigh strongly in favor of dismissal here.

First, dismissal of the Transit Authority's counterclaim would greatly promote judicial economy. Plaintiff consented to the dismissal of Transit Authority as a Defendant from this action (*see* Dkt. Nos. 74 & 81) and has on multiple occasions stated that he intends to dismiss

---

[3] Citing no authority, the Transit Authority also argues that they should be permitted to remain in this action to pursue their counterclaim because "attorneys for the Transit Authority represent Herer, a former employee, and would indemnify him should there be a settlement or judgment against him." Dkt. No. 88 at 2. The decision by the Transit Authority to use its in-house counsel to represent Defendant Herer rather than pay for outside counsel is not relevant to any of the merits of this matter. Because the Court is aware of no caselaw stating that indemnification has any bearing on the supplemental jurisdiction analysis, the Court declines to credit this fact in its determination.

Defendant Herer from this action entirely if the Transit Authority's counterclaim is dropped.[4] The Transit Authority's state law counterclaim is thus, practically speaking, the only issue preventing complete dismissal of this action.  Moreover, as discussed above, if the Transit Authority's state law counterclaim were to remain in this action, the factual and legal issues on that claim would completely swamp those necessary to resolving the constitutional false arrest claim against Defendant Herer.

Second, fairness and convenience to the parties would not be unduly hampered by dismissal.  The Transit Authority—due to the motion to dismiss it *voluntarily* filed—is no longer a Defendant in this action.  Plaintiff has settled all claims against all non-Transit Authority Defendants in this action, and the Transit Authority waited until over a year after this case was initiated to answer and counterclaim.[5]  *See* Dkt. No. 1 (Plaintiff's Complaint, filed on July 13, 2022); *compare to* Dkt. No. 52 (Transit Authority's Answer and Counterclaim, filed on July 31, 2023).

Third, maintaining the counterclaim would effectively render this case almost entirely one of New York state law.  As discussed above, the existence of probable cause to arrest, and Defendant Herer's reasonable cause to believe the information he conveyed to the police, is a complete defense to the § 1983 false arrest claim against Herer, and thus the federal claim rests almost exclusively on that determination.  The Transit Authority's state law counterclaim, however, would require adjudication of not only the legal bounds of New York unjust enrichment but also factual review of six years' of payroll disbursements made to Plaintiff by the Transit Authority, the harm suffered by the Transit Authority therefrom, the scope of Plaintiff's employment and leave status during those six years, and the equities involved in allowing Plaintiff to maintain the alleged benefit from those payments.  *See Allbirds, Inc.*, 598 F. Supp. 3d at 156.  Where a state law claim "substantially predominates," over the federal claim, courts should decline to exercise supplemental jurisdiction thereover. 28 U.S.C. § 1367(c)(3).

Because Plaintiff's constitutional false arrest claim and the Transit Authority's state law unjust enrichment counterclaim are not "so related," that "they form part of the same case or controversy under Article III," and considerations of policy and judicial economy weigh strongly in favor of dismissal, the Court declines to exercise supplemental jurisdiction to allow the Transit Authority to keep its counterclaim alive after being dismissed, on its own motion, as a defendant in this action.

---

[4]    *See* Dkt. No. 84 ("Plaintiff has no problem dismissing the claims against Here [sic] if the Transit drops its counterclaims."); Dkt. No. 89 ("For the record, I have repeatedly informed Transit that I would dismiss Herer from the case if we just agree to walk away from this action.").

[5]    The Transit Authority admits in its letter that it waited until *three years* after the statute of limitations had begun to toll to bring its unjust enrichment counterclaim against Plaintiff, and therefore is likely to be at least partially time-barred in any potential recovery.  *See* Dkt. No. 88 at 2–3 ("[T]he Transit Authority understands that recovery of some of the monies may be time barred, more specifically, the monies issued and collected by Plaintiff prior to December 15, 2016. Notwithstanding this, the Transit Authority would still seek to recover the unearned money issued in Plaintiff's name from at least 2017 through 2019, in the amount of approximately, $176, 296.02, plus interest.")

## CONCLUSION

For the reasons stated herein, the Transit Authority's request to remain in this action to pursue its counterclaim is DENIED, and its counterclaim is hereby DISMISSED without prejudice.

Furthermore, because Plaintiff has represented that he intends to dismiss Defendant Herer from this action if the Transit Authority's counterclaim is dropped, this case is hereby DISMISSED and discontinued without costs, and without prejudice to the right to reopen the action within 14 days of the date of this Order. Any application to reopen **must** be filed within 14 days of this Order; any application to reopen filed thereafter may be denied solely on that basis.[6]

The Clerk of Court is respectfully directed to terminate any outstanding deadlines and close this case.

Dated: May 1, 2024
       New York, New York

                                                SO ORDERED.

                                                _____
                                                MARGARET M. GARNETT
                                                United States District Judge

---

[6] Understanding that Plaintiff and Defendants the City of New York, Yeuris Mejia, Eric Larson, and Jimmy Freyre (collectively, the "City Defendants") have previously entered into a settlement agreement, *see* Dkt. Nos. 81 & 82, if those parties wish for the Court to retain jurisdiction for the purposes of enforcing that settlement agreement, they must submit the settlement agreement to the Court within the 14-day period to be "so ordered" by the Court.